# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

ABBVIE INC., *et al.*,

    *Plaintiffs*,

        *v.*

AARON M. FREY, in his official capacity as
ATTORNEY GENERAL OF MAINE, *et al.*,

    *Defendants*.

Case No. 25-cv-416 (JAW)

---

**BRIEF OF *AMICI CURIAE* THE AMERICAN HOSPITAL ASSOCIATION,
340B HEALTH, MAINE HOSPITAL ASSOCIATION, AND
AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS
IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

Edward MacColl
THOMPSON, BASS & MACCOLL, LLC
15 Monument Square, 4th Floor
Portland, Maine 04101
Tel: (207) 774-7600
emaccoll@thomport.com

*Counsel of Record*

William B. Schultz*
Margaret M. Dotzel*
Alyssa M. Howard*
Courtney Christensen*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
mdotzel@zuckerman.com
ahoward@zuckerman.com
cchristensen@zuckerman.com

*\* pro hac vice motion forthcoming*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................... ii

INTEREST OF *AMICI CURIAE* ............................................................................................... 1

INTRODUCTION .......................................................................................................................... 2

ARGUMENT ................................................................................................................................... 2

I.   CHAPTER 103 DOES NOT VIOLATE THE TAKINGS CLAUSE. ...................................... 2

    A.   AbbVie's Voluntary Participation In The 340B Program And The Highly-Regulated Pharmaceutical Market Forecloses Its Takings Claim................................................. 3

    B.   Chapter 103 Will Not Result in a "Taking" of AbbVie's Property............................... 6

        1.   Chapter 103 will not result in a "physical" taking ........................................... 6

        2.   Chapter 103 will not result in a "regulatory" taking......................................... 9

    C.   Even if there were a taking, AbbVie's requested relief is not available. .................... 12

II.  CHAPTER 103 IS NOT VOID FOR VAGUENESS................................................................ 12

CONCLUSION............................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*74 Pinehurst LLC v. New York*,
    59 F.4th 557 (2d Cir. 2023) ................................................................. 7

*AbbVie Inc. v. Fitch*,
    No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965 (S.D. Miss. July 22, 2024) .................. 3, 4, 7

*AbbVie Inc. v. Skrmetti*,
    No. 3:25-cv-519-AAT, 2025 WL 1805271 (M.D. Tenn. June 30, 2025) .............................. 3, 7

*Abramski v. United States*,
    573 U.S. 169 (2014) ................................................................................ 14

*Andrus v. Allard*,
    444 U.S. 51 (1979) ................................................................................ 8, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 6

*AstraZeneca Pharms. LP v. Bailey*,
    2025 WL 644285 ................................................................................... 11

*Baker Cnty. Med. Servs., Inc. v. U.S. Atty. Gen.*,
    763 F.3d 1274 (11th Cir. 2014),
    *cert. denied*, 575 U.S. 1008 (2015) ........................................................... 4

*Baptiste v. Kennealy*,
    490 F. Supp. 3d 353 (D. Mass. 2020) ...................................................... 10

*Bldg. Owners & Managers Ass'n Int'l v. F.C.C.*,
    254 F.3d 89 (D.C. Cir. 2001) .................................................................... 7

*Bowles v. Willingham*,
    321 U.S. 503 (1944) .......................................................................... 3, 5, 6, 8

*Britton v. Town of York*,
    673 A.2d 1322 (ME 1996) ...................................................................... 13

*Bruns v. Mayhew*,
    750 F.3d 61 (1st Cir. 2014) ..................................................................... 4

*Burditt v. HHS*,
    934 F.2d 1362 (5th Cir. 1991) ................................................................. 4

*CDK Global LLC v. Brnovich*,
    16 F.4th 1266 (9th Cir. 2021) ................................................................. 7

*Cedar Point Nursery v. Hassid,*
  594 U.S. 139 (2021) ................................................................................................ 7, 8

*Colony Cove Props., LLC v. City of Carson,*
  888 F.3d 445 (9th Cir. 2018) ....................................................................................... 10

*Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. Cal.,*
  508 U.S. 602 (1993) ....................................................................................................... 10

*E. Enters. v. Apfel,*
  524 U.S. 498 (1998) ......................................................................................................... 2

*Eli Lilly & Co. v. HHS,*
  No. 1:21-cv-81-SEB-MJD, 2021 WL 5039566 (S.D. Ind. Oct. 29, 2021) ............. 3, 4

*FCC v. Fla. Power Corp.,*
  480 U.S. 245 (1987) ..................................................................................................... 6, 7

*Franklin Mem'l Hosp. v. Harvey,*
  575 F.3d 121 (1st Cir. 2009) .......................................................................................7, 11

*Garelick v. Sullivan,*
  987 F.2d 913 (2d Cir. 1993) ...................................................................................... 3, 4, 5

*Hadacheck v. Sebastian,*
  239 U.S. 394 (1915) ......................................................................................................... 10

*Horne v. Dep't of Agric.,*
  576 U.S. 350 (2015) ........................................................................................................... 5

*Johnson v. United States,*
  576 U.S. 591 (2015) ......................................................................................................... 12

*Kelo v. City of New London,*
  545 U.S. 469 (2005) ......................................................................................................... 12

*Knick v. Twp. of Scott,*
  588 U.S. 180 (2019) ......................................................................................................... 12

*Knox v. Brnovich,*
  907 F.3d 1167 (9th Cir. 2018) .......................................................................................... 12

*Lingle v. Chevron U.S.A.,*
  544 U.S. 528 (2005) ........................................................................................................11

*Loretto v. Teleprompter Manhattan CATV Corp.,*
  458 U.S. 419 (1982) ........................................................................................................... 6

*Lucas v. S.C. Coastal Council,*
  505 U.S. 1003 (1992) ............................................................................ 8, 10

*Maine Educ. Ass'n Benefits Tr. v. Cioppa,*
  695 F.3d 145 (1st Cir. 2012) ...............................................................10, 11

*Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare,*
  742 F.2d 442 (8th Cir. 1984) .............................................................. 3, 4, 5

*Nat'l Lifeline Ass'n v. FCC,*
  983 F.3d 498 (D.C. Cir. 2020) ................................................................ 3, 5

*Nebbia v. People of New York,*
  291 U.S. 502 (1934) ..................................................................................... 8

*Pharm. Rsch. & Mfrs. of Am. v. Walsh,*
  538 U.S. 644 (2003) ..................................................................................... 4

*PhRMA v. Fitch,*
  No. 1:24-cv-160-HSO-BWR, 2024 WL 3277365 (S.D. Miss. July 1, 2024) ......................... 12

*PhRMA v. McClain,*
  95 F.4th 1145 ............................................................................................. 12

*PhRMA v. Murrill,*
  Nos. 6:23-cv-997, 6:23-cv-1042, 6:23-cv-1307,
  2024 WL 4361597 (W.D. La. Sept. 30, 2024) ........................................ 3, 4, 12, 13

*PhRMA v. Stolf,*
  2025 WL 2448851 (9th Cir. Aug. 26, 2025) ............................................... 5

*Ruckelshaus v. Monsanto,*
  467 U.S. 986 (1984) ..................................................................................... 3

*Sanofi-Aventis U.S., LLC v. U.S. Dep't of Health & Hum. Servs.,*
  570 F. Supp. 3d 129 (D.N.J. 2021),
  *rev'd on other grounds*, 58 F.4th 696 (3d Cir. 2023) ............................... 3, 4

*Se. Ark. Hospice, Inc. v. Burwell,*
  815 F.3d 448 (8th Cir. 2016) ................................................................... 4, 5

*St. Francis Hosp. Ctr. v. Heckler,*
  714 F.2d 872 (7th Cir. 1983) ....................................................................... 4

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,*
  535 U.S. 302 (2002) .................................................................................. 2, 9

*Uliano v. Bd. of Env't Prot.*,
   977 A.2d 400 (ME 2009) ........................................................................... 13

*Vill. of Euclid v. Ambler Realty Co.*,
   272 U.S. 365 (1926) .................................................................................. 10

*Whitney v. Heckler*,
   780 F.2d 963 (11th Cir. 1986) ................................................................. 3, 4

*Yates v. United States*,
   574 U.S. at 543 (2015) .............................................................................. 13

*Yee v. City of Escondido, Cal.*,
   503 U.S. 519 (1992) ............................................................................. 6, 8, 9

**STATUTES**

15 U.S.C. § 77 ................................................................................................ 13

18 U.S.C. § 245 .............................................................................................. 13

29 U.S.C. § 158 .............................................................................................. 13

29 U.S.C. § 2615 ............................................................................................ 13

42 U.S.C. § 1396 .............................................................................................. 4

42 U.S.C. § 256 ................................................................................................ 8

42 U.S.C. § 3617 ............................................................................................ 13

47 U.S.C. § 333 .............................................................................................. 13

**OTHER AUTHORITIES**

American Heritage Dictionary 669 (2d College ed. 1982) ........................... 13

Black's Law Dictionary (12th ed. 2024) ...................................................... 13

Merriam-Webster Dictionary,
   https://www.merriam-webster.com/dictionary/interfering.......................... 13

State of Maine Professional & Fin. Reg., Board of Pharmacy – Licensing – Establishments,
   available at https://www.maine.gov/pfr/professionallicensing/professions/board-
   pharmacy/licensing/establishments#4 (last visited September 10, 2025) ................................. 5

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution, Fifth Amendment .......................................................... 12

## INTEREST OF *AMICI CURIAE*

*Amici* and their members are committed to improving the health of the communities they serve through the delivery of high-quality, efficient, and accessible health care. The discounts provided by the 340B program are essential to achieving this goal. *Amici* therefore have a strong interest in the success of Maine's legislative efforts to protect the 340B program.

The **American Hospital Association** (AHA) represents nearly 5,000 hospitals, healthcare systems, and other healthcare organizations nationwide. AHA members are committed to helping ensure that healthcare is available to and affordable for all Americans. AHA promotes the interests of its members by participating as *amicus curiae* in cases with important and far-ranging consequences, including cases related to the 340B program.

**340B Health** is a national, not-for-profit organization founded in 1993 to advocate for 340B hospitals—a vital part of the nation's healthcare safety net. 340B Health represents over 1,600 public and private nonprofit hospitals and health systems participating in the 340B program.

The **Maine Hospital Association** (MHA) represents 32 community-governed hospitals in Maine and is the primary advocate for hospitals in the Maine State Legislature, the U.S. Congress and state and federal regulatory agencies. It also provides educational services and serves as a clearinghouse for comprehensive information for its hospital members, lawmakers, and the public. MHA is a leader in developing healthcare policy and works to stimulate public debate on important healthcare issues that affect all of Maine's citizens.

The **American Society of Health-System Pharmacists** (ASHP) is the largest association of pharmacy professionals in the United States. ASHP advocates and supports the professional practice of pharmacists in hospitals, health systems, ambulatory care clinics, and other settings spanning the full spectrum of medication use. For over 80 years, ASHP has championed innovation

in pharmacy practice, advanced education, and professional development, and has served as a steadfast advocate for members and patients.

## **INTRODUCTION**

*Amici* respectfully refer the Court to the *amicus* brief they previously filed in another case pending before this Court challenging the same Maine law, Chapter 103. *See Amicus* Br. of AHA et al., ECF No. 29, *Novartis Pharms. Corp. v. Frey*, No. 1:25-cv-407. That brief set forth the importance of contract pharmacy arrangements in Maine, as well as why Chapter 103 is not preempted by the federal 340B statute. *Id.*

*Amici* submit this brief to explain why the unique claims brought by Plaintiffs AbbVie Inc., Allergan, Inc., Durata Therapeutics, Inc., AbbVie Products, LLC, Pharmacyclics LLC, and Allergan Sales, LLC (collectively, AbbVie) against Chapter 103 are unlikely to succeed on the merits.[1] Accordingly, this Court should deny AbbVie's motion for preliminary injunction.

## **ARGUMENT**

## I. **CHAPTER 103 DOES NOT VIOLATE THE TAKINGS CLAUSE.**

"A party challenging governmental action as an unconstitutional taking bears a substantial burden." *E. Enters. v. Apfel*, 524 U.S. 498, 523 (1998). But AbbVie would fail to state a Takings Clause claim even under the most lenient of standards; in fact, when viewed under the proper legal framework, AbbVie fails to even allege that its property is being taken.

Takings Clause claims fall into two categories: (1) physical takings, which result from permanent physical occupation of private property; and (2) regulatory takings, which stem from government-imposed regulations restricting an owner's ability to use his own property. *Tahoe-*

---

[1] For the reasons set forth in Defendants' Opposition, AbbVie also fails to meet the remaining factors required for this Court to grant a preliminary injunction.

*Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). AbbVie cannot show that its property will be "taken" under physical takings analysis and does not seek (nor could it) a preliminary injunction based on an allegation that Chapter 103 constitutes a regulatory taking.

### A. AbbVie's Voluntary Participation In The 340B Program And The Highly-Regulated Pharmaceutical Market Forecloses Its Takings Claim.

At the outset, even if AbbVie could demonstrate that Chapter 103 results in a taking (and it cannot for the reasons stated below), its claim would fail because AbbVie participates in both the 340B program <u>and</u> the Maine pharmaceutical market voluntarily. Either would be sufficient, but its voluntary participation in both decisively defeats its Takings Clause claim.

Where a property owner voluntarily participates in a government program "in exchange for the economic advantages" of joining that program, there can be no taking. *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1007 (1984). Likewise, governmental regulation affecting a plaintiff's property interests "does not constitute a taking of property where the regulated group is not required to participate in the regulated industry." *Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir. 1986); *see, e.g.*, *Bowles v. Willingham*, 321 U.S. 503, 517 (1944); *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 515 (D.C. Cir. 2020); *Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir. 1993); *Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984).

As numerous courts have held,[2] these elemental Takings Clause principles defeat AbbVie's claim. Indeed, all five courts to consider this issue in the 340B context have rejected the Fifth Amendment challenges of pharmaceutical companies.[3] And in the healthcare context more

---

[2] *See AbbVie v. Fitch*, 2024 WL 3503965, at *17–19 (addressing voluntariness); *AbbVie v. Skrmetti*, 2025 WL 1805271, at *19 (M.D. Tenn. June 30, 2025) (an analogous state law "does not require [a drug manufacturer] to sell its drugs in Tennessee at all; [drug manufacturers] voluntarily choose[] to participate in Medicare and Medicaid and to participate in the 340B program as a condition of that choice.").

[3] *Eli Lilly & Co. v. HHS*, No. 1:21-cv-81-SEB-MJD, 2021 WL 5039566, at *21 (S.D. Ind. Oct. 29, 2021); *Sanofi-Aventis*, 570 F. Supp. 3d at 207–10; *AbbVie v. Fitch*, 2024 WL 3503965, at *16–20; *AbbVie v. Skrmetti*, 2025 WL 1805271, at *19; *PhRMA v. Murrill*, 2024 WL 4361597, at *15.

generally, courts routinely reject Takings Clause claims where the plaintiff voluntarily participates in the program or activity that it claims is taking its property.[4]

AbbVie's awareness of the possibility of state regulation of contract pharmacies is especially damning. As other courts have held, those restrictions "should have been foreseeable to [AbbVie], as Section 340B has had a well-known 'gap' about how delivery must occur," *AbbVie Inc. v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965, at *19 (S.D. Miss. July 22, 2024), particularly in light of drug companies' argument in favor of that cap and 340B hospital's longstanding use of contract pharmacies. *PhRMA v. Murrill*, Nos. 6:23-cv-997, 6:23-cv-1042, 6:23-cv-1307, 2024 WL 4361597, at *15 (W.D. La. Sept. 30, 2024) (rejecting Takings claim because "regulations requiring delivery and forbidding restrictions against delivery to contract pharmacies were foreseeable"). Tellingly, even though AbbVie is now apprised of Chapter 103 and similar statutes in other states, it continues to voluntarily participate in the 340B program and sell drugs to 340B hospitals in those other states.

To respond to this straightforward precedent about voluntary participation in the 340B program, AbbVie contends that it has not voluntarily accepted *state*-imposed obligations like those set forth in Chapter 103.[5] But even if that were a valid end-run around its voluntary decision to

---

[4] *See Se. Ark. Hospice, Inc. v. Burwell*, 815 F.3d 448, 450 (8th Cir. 2016); *Baker Cnty. Med. Servs., Inc. v. U.S. Atty. Gen.*, 763 F.3d 1274, 1276 (11th Cir. 2014), *cert. denied*, 575 U.S. 1008 (2015); *Minn. Ass'n of Health Care Facilities v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984); *Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir. 1993); *Burditt v. HHS*, 934 F.2d 1362, 1376 (5th Cir. 1991); *Whitney v. Heckler*, 780 F.2d 963, 968–73 (11th Cir. 1986); *St. Francis Hosp. Ctr. v. Heckler*, 714 F.2d 872, 875 (7th Cir. 1983); *Eli Lilly & Co. v. HHS*, 2021 WL 5039566, at *21; *Sanofi-Aventis U.S., LLC v. U.S. Dept. of Health & Hum. Servs.*, 570 F. Supp. 3d 129, 207–10 (D.N.J. 2021), *rev'd on other grounds*, 58 F.4th 696 (3d Cir. 2023); *AbbVie v. Fitch*, 2024 WL 3503965, at *16–20.

[5] Even if the requirement of an additional state-law benefit had some basis in precedent—and it does not— manufacturers receive an important benefit from Maine in exchange for compliance with Maine law. Medicaid is a "cooperative federal-state program." *Bruns v. Mayhew*, 750 F.3d 61, 63 (1st Cir. 2014). And state Medicaid coverage of outpatient drugs is largely optional, not mandatory. *See* 42 U.S.C. § 1396a(54); *see also Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 665 (2003) ("We have made it clear that the Medicaid Act gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in the best interest of the recipients." (citation omitted)). Maine's decision to cover such drugs confers a specific benefit on drug manufacturers. Maine could revisit that decision, along with others that benefit other drug

4

participate in a 340B program that contains numerous statutory gaps that can be filled by states—and it is not—AbbVie's participation in a regulated market remains indisputably voluntary. The law is clear that when a company voluntarily participates in a regulated market, there can be no Takings Clause violation, even if a State imposes additional conditions on participation. *See Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984). This is because "when an owner of property voluntarily participates in a regulated market, additional regulations that may reduce the value of the property regulated do not result in a taking." *Nat'l Lifeline Assoc.*, 983 F.3d at 515 (citing *Bowles*, 321 U.S. at 517 and *Garelick*, 987 F.2d at 916 (2d Cir. 1993)); *see also Se. Ark. Hospice, Inc. v. Burwell*, 815 F.3d 448, 450 (8th Cir. 2016).

Health care (in general) and pharmaceuticals (in particular) are among the most heavily regulated markets—including at the state level. *PhRMA v. Stolfi*, No. 24-1570, 2025 WL 2448851, at *24 (9th Cir. Aug. 26, 2025) ("The pharmaceutical industry is unquestionably an industry with a long history of government regulation") (discussing both state and federal regulations). Maine itself robustly regulates pharmaceuticals, as AbbVie should be well aware because it has obtained (as it is required to) a Maine Pharmacy License.[6] *Cf. Horne v. Dep't of Agric.*, 576 U.S. 350, 366 (2015) (noting that *Monsanto*'s voluntariness principle arose in a case involving "a license to sell dangerous chemicals"). AbbVie's voluntary choice to participate in Maine's highly-regulated pharmaceutical market is fatal to its Takings Clause claim, even if this Court concludes that its voluntary participation in the 340B program is not.

---

manufacturers, if they refuse to comply with its laws concerning delivery of 340B drugs. This is more than enough to meet the "additional-State-benefit" standard that the drug companies have invented.

[6] State of Maine Professional & Fin. Reg., Board of Pharmacy – Licensing – Establishments, available at https://www.maine.gov/pfr/professionallicensing/professions/board-pharmacy/licensing/establishments#4 (last visited September 10, 2025).

In the end, AbbVie and its sister drug companies want to have their cake and eat it too. They want to participate in the 340B Program and the highly-regulated pharmaceutical market without accepting the possibility that the economic advantages of doing so may carry the costs of regulation. The law has never countenanced AbbVie's impossible dream. *E.g.*, *Bowles*, 321 U.S. at 518 ("A member of the class which is regulated may suffer economic losses not shared by others. His property may lose utility and depreciate in value as a consequence of regulation.").

**B.  Chapter 103 Will Not Result in a "Taking" of AbbVie's Property.**

If this Court disagrees with *Amici*'s voluntariness analysis, AbbVie's claim still would fail because AbbVie cannot establish *either* a physical or regulatory taking.

### 1.  Chapter 103 will not result in a "physical" taking

AbbVie's principal Takings Clause argument is that Chapter 103 results in a "physical" taking because it forces drug companies to transfer their prescription drugs to covered entities under prices they would not otherwise offer. Pls.' MPI at 17–19.[7] But AbbVie misapprehends the governing Supreme Court precedent. When considered under the correct legal framework, there is no "forced transfer" so there can be no "physical taking."

The Supreme Court has made clear that the essential "element" of a "physical" takings claim is "required acquiescence." *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987). In doing so, the Court has drawn a clear dividing line between (1) laws that "*require*" a property owner to "suffer the physical occupation of a portion" of his property, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982), and (2) situations where a property owner voluntarily chooses to engage in a commercial transactions with a third party *and then is subject to government*

---

[7] AbbVie's assertion that Chapter 103 forces manufacturers to transfer drugs is not a factual allegation but is instead a legal conclusion couched as a factual allegation. The Court is not required to accept that assertion as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992) (characterizing the conclusion that a rent control ordinance transfers interest from one private party to another as "an argument").

*regulation*, *see Fla. Power Corp.*, 480 U.S. at 252-253.[8] As the Court has put it, "it is the invitation . . . that makes the difference." *Id.* at 253. When there is no such "required acquiescence," there is no "physical" taking.

AbbVie's claim fails because there is no "required acquiescence" under Chapter 103. No matter how many times AbbVie uses the term "forced," it cannot escape the fact that it has chosen to enter the Maine market to engage in commercial transactions with 340B hospitals. AbbVie admits that it will sell to Maine 340B hospitals and will readily ship its drugs to a 340B hospital's in-house pharmacy, as it must do so under the 340B Program. Chapter 103 operates *after* AbbVie's decides to sell its drugs to 340B hospitals—namely, by ensuring that a Maine 340B hospital can choose *where* it wants AbbVie to ship its drugs. All Chapter 103 does is regulate how a particular aspect of those transactions (delivery) must occur—much like dozens of other state laws regulating the particulars of relationships between buyers and sellers in commercial transactions. As such, because nothing *requires* AbbVie to enter the market to transfer drugs to Maine 340B hospitals, nothing in Chapter 103 physically deprives AbbVie of its drugs within the meaning of the Takings Clause. Accordingly, AbbVie's "physical" takings theory must fail. *See AbbVie v. Fitch*, 2024 WL 3503965, at *19; *AbbVie v. Skrmetti*, No. 3:25-cv-519-AAT, 2025 WL 1805271, at *19 (M.D. Tenn. June 30, 2025) ("State regulations on delivery do not amount to taking possession of [a drug manufacturer's] property or conveying it to a third party."); *see also Franklin Mem'l Hosp. v.*

---

[8] *See also Cedar Point*, 594 U.S. at 157 ("Limitations on how a business generally open to the public may treat individuals on the premises are readily distinguishable from regulations granting a right to invade property closed to the public."); *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1282 (9th Cir. 2021) ("It is no answer that CDK may not wish to open its [dealer management system] to any particular authorized integrator. Once property owners voluntarily open their property to occupation by others, they cannot assert a per se right to compensation based on their inability to exclude particular individuals." (quotation marks omitted)); *74 Pinehurst LLC v. New York*, 59 F.4th 557, 563 (2d Cir. 2023); *Bldg. Owners & Managers Ass'n Int'l v. F.C.C.*, 254 F.3d 89, 98 (D.C. Cir. 2001).

*Harvey*, 575 F.3d 121, 126 (1st Cir. 2009) (rejecting characterization of a state statute requiring hospitals to provide free care to low income patients as a "forced transfer").

The Supreme Court's decision in *Yee,* 503 U.S. 519, is instructive. The Court explained that when "a landowner decides to rent his land to tenants, the government may place ceilings on the rents the landowner can charge . . . or require the landowner to accept tenants he does not like, without automatically having to pay compensation." *Id.* at 529. Given this holding, Chapter 103 is as much a "forced transfer," as it was a forced rental in *Yee*. Critically, AbbVie has decided to sell its drugs to Maine 340B hospitals in exactly the same way the landowner decided to "rent his land to tenants." *Id.* So, just as the Supreme Court held that the government may "require the landlord to accept tenants he does not like," *id.*, Maine may require AbbVie to accept delivery conditions it does not like. And just as *Yee* held that the law "merely regulate[d] the petitioners' use of their land by regulating the relationship between landlord and tenant," *id.* at 528, the law here merely regulates *the use* of 340B drugs by regulating the relationship between the drug company and the covered entity. Any regulation of the *use* of property, including when, where, how, and to whom a good is sold, must be evaluated as a "regulatory" taking—not as a "physical" taking. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021); *Horne*, 576 U.S. at 361; *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027–28 (1992); *Andrus v. Allard*, 444 U.S. 51, 67 (1979); *see also Bowles*, 321 U.S. at 517–18; *Nebbia v. People of New York*, 291 U.S. 502, 532 (1934).

Finally, AbbVie is wrong that Chapter 103 forces drug manufacturers to transfer their drugs at discounted prices to entities not contemplated by the federal 340B program. And even if true, it would still not constitute a physical taking. For starters, any drug company that chooses to participate in the 340B program must offer its drugs to 340B entities at or below a statutory ceiling price. *See* 42 U.S.C. § 256b(a). Having made the choice to enter the 340B program and thus to sell

its drugs to Maine's 340B hospitals, AbbVie has subjected itself to—at most—"use" regulations, including those governing drug delivery that take as given that federally-dictated 340B price. "Use" regulations like those imposed under Chapter 103 must be evaluated under the "regulatory" takings framework. AbbVie cannot satisfy that framework either.

More fundamentally, it is critical to observe that AbbVie does not even allege that its property is being "taken" at all. All AbbVie's says is that Chapter 103 results in a "physical" taking because it forces drug companies to transfer their prescription drugs to covered entities under prices they would not otherwise offer. That, again, is not a "physical" taking. *Cf. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). ("The starting point for the court's analysis should have been to ask whether there was a total taking of the entire parcel; if not, then *Penn Central* was the proper framework."). At most, this alleged pricing "ceiling" is a "use" restriction of the kind that courts routinely analyze under the "regulatory" takings framework. *Yee*, 503 U.S. at 529. For this reason, too, AbbVie's "physical" takings argument must fail.

### 2. *Chapter 103 will not result in a "regulatory" taking*

A "regulatory" taking occurs when a government regulation so severely interferes with an owner's right to use property as to be fairly characterized as having "taken" it. *Tahoe-Sierra*, 535 U.S. at 322. AbbVie's complaint includes just two paragraphs alleging, in the alternative, a "regulatory" takings under *Penn Central*. Compl. ¶ 172–73. That effort is half-hearted for a reason: AbbVie plainly cannot establish a taking under the *Penn Central* framework.

The *Penn Central* framework determines when a regulation has gone "too far." *Andrus*, 444 U.S. at 65 (citing *Penn Central,* 438 U.S. at 123-128). "The major factors under the *Penn Central* inquiry are (1) the economic impact of the regulation on the claimant, (2) the extent to

9

which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Maine Educ. Ass'n Benefits Tr. v. Cioppa,* 695 F.3d 145, 153 (1st Cir. 2012)*.* None of these factors support a "regulatory" taking here.

*First*, AbbVie makes no specific allegations about the economic impact of Chapter 103. But even if AbbVie had alleged more, it would struggle to satisfy this factor. Generally speaking, laws meant to support the health, safety, morals, and general welfare of the entire community are generally upheld even if they destroy or adversely affect private property interests. *See Lucas*, 505 U.S. at 1023*.* More specifically, the most that AbbVie could allege is that it has lost some modest value in its property by having to sell certain drugs at 340B prices. But a reduction in the value of property is insufficient to demonstrate a taking. *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993) (holding that the "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking" finding no "regulatory" taking where there was a 46 percent diminution in property value). And "the mere loss of some income because of regulation does not itself establish a taking." *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 389 (D. Mass. 2020) (quoting *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018)); *see also Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 384 (1926) (rejecting a takings claim where the claimant's property was deprived of 75% of its value ); *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (rejecting a takings claim where the claimant's property was deprived of 92.5% of its value). Thus, had AbbVie even made allegations about economic impact, those allegations would fall far short of satisfying the first *Penn Central* factor.

AbbVie fares no better under the second *Penn Central* factor. What is important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property.

As such, AbbVie's "expectations are substantially diminished by the highly regulated nature of the industry in which it operates." *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 154 (1st Cir. 2012) (citing *Franklin Mem'l Hosp. v. Harvey,* 575 F.3d 121, 128 (1st Cir. 2009)). "This is particularly true where, as here, the extensive regulatory framework in place prior to the passage of the challenged legislation has consistently regulated the type of property interest for which the [AbbVie] seeks constitutional protection." *Id.* Having chosen to do business in the highly-regulated pharmaceutical field, AbbVie cannot now complain that more regulations were unforeseeable. And to make matters worse, AbbVie had long delivered its drugs to contract pharmacies; it only changed course in 2022. Given that historical record, AbbVie cannot claim that Chapter 288 interfered with its investment-backed expectations. *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 155 (1st Cir. 2012) ("key aspect of the investment-backed expectations inquiry is the claimant's awareness of the problem that spawned the challenged regulation.").

Finally, the third *Penn Central* factor considers the "'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Lingle v. Chevron U.S.A.*, 544 U.S. 528, 539 (2005). Here, Chapter 103 plainly seeks to promote public welfare by adjusting those benefits and burdens. Its primary purpose is to advance the public good by ensuring that Maine's 340B hospitals can help their patients to receive 340B drugs at more convenient delivery locations, even if that imposes incidental burdens on drug companies. As such, the character of the government action weighs against AbbVie. *E.g.*, *AstraZeneca Pharms. LP v. Bailey*, 2025 WL 644285, at *6.

**C.  Even if there were a taking, AbbVie's requested relief is not available.**

Even if AbbVie could somehow establish that Chapter 103 will result in its property being taken, its takings claim would still fail because Chapter 103 serves a legitimate public purpose within Maine's police power. AbbVie seeks to enjoin Chapter 103 altogether—a form of equitable relief that "is generally unavailable" when the government takes private property for public use because the Constitution specifically provides a monetary remedy for such a taking: "just compensation." U.S. Const. Amdt. V; *Knick v. Twp. of Scott*, 588 U.S. 180, 201 (2019). For injunctive relief, AbbVie therefore must show not only that Chapter 103 results in a taking, but also that such a taking falls outside the "broad and inclusive" conception of "public use" that the Supreme Court has repeatedly reaffirmed under the Takings Clause. *Kelo v. City of New London*, 545 U.S. 469, 480–81 (2005). It cannot do so. Chapter 103 clearly serves a public use. State contract pharmacy statutes like Chapter 103 "assist[] in fulfilling the purpose of [the 340B program]," which Congress created "to support" covered entities that "perform valuable services for low-income and rural communities but have to rely on limited federal funding for support." *PhRMA v. McClain*, 95 F.4th at 1145. That is plainly a "public purpose."

## II.    CHAPTER 103 IS NOT VOID FOR VAGUENESS.

A regulation is void for vagueness if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *Knox v. Brnovich*, 907 F.3d 1167, 1182 (9th Cir. 2018). That is not the case here.

That Chapter 103 does not include a definition of "interfere" does not render the statute unconstitutionally vague, as two other district courts addressing analogous state statutes have already found. *PhRMA v. Murrill*, 2024 WL 4361597, at *10–11 (holding that an analogous statute

that failed to define "interfere" was not unconstitutionally vague); *PhRMA v. Fitch*, No. 1:24-cv-160-HSO-BWR, 2024 WL 3277365, at *15 (S.D. Miss. July 1, 2024). Drug "manufacturer[s]"—the only entities subject to Chapter 103's prohibitions—can readily assess what conduct is prohibited by the statute's terms, including the term "interfere." If necessary, dictionaries can help provide the necessary clarity.[9] Indeed, the Maine Supreme Court has already relied on a dictionary definition of "interfere" in rejecting a vagueness challenge. *See Uliano v. Bd. of Env't Prot.*, 977 A.2d 400, 409 (ME 2009) (defining interfere as "to 'come between so as to be a hindrance.'" (citing The American Heritage Dictionary 669 (2d College ed. 1982)); *see also Britton v. Town of York*, 673 A.2d 1322, 1325 (Me. 1996) ("In the present case, assigning to the terms 'interference,' 'interfere,' … their plain and common meaning provides the York Zoning Ordinances sufficient guidelines to withstand constitutional muster. (quotation marks omitted)). Countless criminal and civil statutes also prohibit "interference" without expressly defining the term.[10] And to the extent there is any doubt, courts may apply the doctrine of *noscitur a sociis*, under which "a word is known by the company it keeps," *Yates v. United States*, 574 U.S. at 543 (2015), meaning that the term "interference" can be considered in the context of the surrounding words "deny," "restrict," and "prohibit." *See* Chapter 103 § 7753(1).

---

[9]    Black's Law Dictionary defines "interference" as "[t]he act of . . . meddling in the affairs of others" or "[a]n obstruction or hindrance." *Interference*, Black's Law Dictionary (12th ed. 2024); *PhRMA v. Murrill*, 2024 WL 4361597, at *10–11. Merriam-Webster defines "interfere" as "to enter into or take a part in the concerns of others," "to interpose in a way that hinders or impedes[,]" or "to act reciprocally so as to augment, diminish, or otherwise affect one another[.]" *Interfere*, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/interfering.

[10]    For example, there are numerous uses of the term "interfere" in the U.S. Code. *E.g.*, 15 U.S.C. § 77kk(c) ("[I]t shall be unlawful for [specified entity] . . . to do any act directly or indirectly which would interfere with or obstruct or hinder or which might be calculated to obstruct, hinder, or interfere with the policy or policies of the said Department of State or the Government of the United States . . ."); 18 U.S.C. § 245(b); 29 U.S.C. § 158(a); 29 U.S.C. § 2615(a)(1); 42 U.S.C. § 3617; 47 U.S.C. § 333. Thus, finding the term "interfere" to render H.B. 2048 unconstitutionally vague would have vast repercussions throughout the various civil and criminal codes of Maine and the nation.

Furthermore, AbbVie knows that these contracts relate to the delivery of 340B drugs to pharmacies, and in fact, devotes pages of its brief describing how those contracts operate. The Maine Legislature specifically responded to drug manufacturers' efforts, since 2020, to restrict contract pharmacy arrangements. Courts must "interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'" *Abramski v. United States*, 573 U.S. 169, 179 (2014) (internal citation omitted). Given this history and context, AbbVie knows exactly what the Chapter 103 seeks to prevent. Its feigned ignorance about the meaning of the term "interfere" cannot be taken seriously.

## **CONCLUSION**

For the foregoing reasons, AbbVie's Motion for a Preliminary Injunction should be denied.

14

Dated: September 12, 2025

Respectfully submitted,

*/s/ Edward MacColl*
Edward MacColl
THOMPSON, BASS & MACCOLL, LLC
15 Monument Square, 4th Floor
Portland, Maine 04101
Tel: (207) 774-7600
emaccoll@thomport.com

*Counsel of Record*

William B. Schultz*
Margaret M. Dotzel*
Alyssa M. Howard*
Courtney Christensen*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
mdotzel@zuckerman.com
ahoward@zuckerman.com
cchristensen@zuckerman.com

*Counsel for Amici Curiae*

*\* pro hac vice motion filed contemporaneously*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 12, 2025, I caused the foregoing to be served via the Court's

ECF filing system on all registered counsel of record.

*/s/ Edward MacColl*

*Counsel for Amici Curiae*